**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**LAURIE L. SCHWAB,**

                                        **Plaintiff,**                          **11-CV-0333S (Sr)**

**v.**

**TLC HEALTH CARE NETWORK,**

                                        **Defendant.**

---

## REPORT, RECOMMENDATION AND ORDER

This case was referred to the undersigned by the Hon. William M. Skretny, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.  Dkt. #16.


Currently before the Court is plaintiff's motion to amend the complaint (Dkt. #8), and defendant's motion to dismiss the complaint.  Dkt. #11.  For the following reasons, the motion to amend is granted and it is recommended that the motion to dismiss be denied.


## BACKGROUND

Plaintiff Laurie Schwab was hired by defendant TLC Health Care Network as a Registered Nurse in May of 2000.  Dkt. #10, ¶ 10.  In February of 2004, plaintiff sustained a knee injury which required surgery.  Dkt. #10, ¶ 10.  In early 2005, plaintiff alleges that she notified TLC Health Care Network of her disability and requested reasonable accommodation.  Dkt. #10, ¶ 55.

Plaintiff alleges that she was informed that she was not qualified to apply for an infection control position with defendant in 2005 because she did not have a bachelor's degree, even though the position was subsequently offered to a nondisabled female employee who did not possess a bachelor's degree.  Dkt. #10, ¶¶ 11-12.   Later in 2005, plaintiff was questioned about her knee injury during an interview for a chemical dependency position with defendant.  Dkt. #10, ¶ 12.  That position was offered to a nondisabled male.  Dkt. #10, ¶ 13.  Plaintiff alleges that she made numerous complaints about this disparate treatment and, in 2006, filed a formal written complaint about the discrimination to which she was subjected.  Dkt. #10, ¶¶ 14-15.

During 2006 and 2007, plaintiff alleges that despite a severe shortage of nurses, she was denied the opportunity to work overtime by the Vice President of Acute Care, Pat Myers.  Dkt. #10,  ¶ 16.

On April 14, 2008, plaintiff alleges that she was berated by Pat Myers for discussing a job posting with a co-worker.  Dkt. #10, ¶ 19.

Plaintiff also alleges that at some point in 2008, in violation of the defendant's job posting policy, the Surgery Manager awarded two full-time positions to per diem nurses before plaintiff could apply for them.  Dkt. #10, ¶ 20.

Sometime after October, 2008, Pat Myers cancelled plaintiff's internal e-mail account.  Dkt. #10, ¶ 22.

On November 20, 2008, plaintiff filed a second formal complaint regarding the discrimination and retaliation to which she alleges she was subjected. Dkt. #10, ¶ 23. The following day, plaintiff alleges that Pat Myers falsely accused her of leaving her patients unattended. Dkt. #10, ¶ 24. When plaintiff attempted to document the falsity of Pat Myers' accusation in a report to Human Resources, Tracie Luther, the Vice President of Human Resources, defended Ms. Myers and questioned plaintiff's emotional stability. Dkt. #10, ¶ 25. Thereafter, plaintiff was denied orientation assignments, all three of which were given to nurses without disabilities. Dkt. #10, ¶ 26.

On December 18, 2008, TLC Health Care Network's CFO and Acting CEO, John Schrier, cut plaintiff's hours and threatened to change plaintiff's schedule so as to conflict with her second job. Dkt. #10, ¶ 27. Plaintiff alleges that no other nurse in the Acute Care section had her hours cut and that the decrease in plaintiff's hours exacerbated an existing staffing shortage. Dkt. #10, ¶ 28. In January of 2009, Pat Myers called plaintiff while she was on vacation and demanded that she come to work to discuss the change in plaintiff's schedule. Dkt. #10, ¶ 29.

On February 11, 2009, plaintiff alleges that Pat Myers attempted to prevent the home care supervisor from offering plaintiff overtime. Dkt. #10, ¶ 30. On February 13, 2009, plaintiff alleges that Pat Myers criticized plaintiff in the hallway and slammed shut the laptop computer plaintiff was using. Dkt. #10, ¶ 32. On March 17, 2009, Pat Myers threatened to change plaintiff's work schedule so that plaintiff would be unable to work overtime. Dkt. #10, ¶ 34.

In April of 2009, plaintiff alleges that male members of the staff told sexually offensive jokes in plaintiff's presence.  Dkt. #10, ¶ 35.  Plaintiff alleges that Andy Gyzl referred to himsel as "the company whore" and would frequently make "humping" motions on the female nurses and Pat Myers.  Dkt. #10, ¶ 36.  Plaintiff also alleges that Andy Gyzl sent pornographic text messages to male colleagues.  Dkt. #10, ¶ 36.  On April 7 and 8, 2009, Andy Gyzl and Mark Hughes discussed sexually explicit material and used profanity to complain about TLC Health Care Network.  Dkt. #10, ¶ 39.  Mark Hughes told plaintiff that the reason he did not get reprimanded as severely as the female nurses was "because I spend a lot of time munching under desks."  Dkt. #10, ¶ 38.  Plaintiff alleges that Mark Hughes proceeded to make slurping, licking and kissing sounds to plaintiff, then pulled imaginary hair out of his teeth.  Dkt. #10, ¶ 38.  Plaintiff alleges that Pat Myers was often present when male employees engaged in sexually explicit conversation or shared sexually explicit materials, but failed to discipline them, while female employees commented that they "couldn't even breathe" without being reprimanded by Pat Myers.  Dkt. #10, ¶¶ 44-45.  Plaintiff alleges that she complained about the behavior of the male employees but TLC Health Care Network did not investigate her allegations.  Dkt. #10, ¶ 46.

On April 14, 2009, plaintiff filed a charge of discrimination with the New York State Division of Human Rights alleging discrimination on the basis of age, sex and disability, as well as retaliation.  Dkt. #10, ¶ 6.  In her charge of discrimination, plaintiff alleges that she is 53 years old and is disabled because of an injury to her right knee.  Dkt. #11-1, ¶ 1.  In rebuttal to defendant's answer to the charge, plaintiff set forth

examples of sexual explicit language and inappropriate sexual behavior by male nurses, including the April, 2009 incidents.  Dkt. #14-2, p.5.

On June 11, 2010, the NYSDHR issued a Determination and Order After Investigation which found No Probable Cause.  Dkt. #10, ¶ 8.  In support of its determination, the NYSDHR noted that the majority of TLC Health Care Network's 126 RN's are women (51 of whom are the same age or older than plaintiff), and that plaintiff had worked the 6th highest amount of overtime since December 30, 2007.  Dkt. #11-1, p.9.   Plaintiff's request for an EEOC review of the NYSDHR findings resulted in a dismissal and Notice of Rights dated January 20, 2011.  Dkt. #10, ¶ 9.  This action was commenced on April 20, 2011.  Dkt. #1.

Plaintiff's proposed amended complaint asserts the same six causes of action set forth in her original complaint: (1) discrimination in violation of the Americans with Disabilities Act ("ADA"); (2) retaliation in violation of the ADA; (3) discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (4) retaliation in violation of the ADEA; (5) discrimination on the basis of sex in violation of Title VII of the Civil Rights Act ("Title VII"); and (6) retaliation in violation of Title VII.  Dkt. #10.

## DISCUSSION AND ANALYSIS

**Exhaustion of Administrative Remedies**

Defendant argues that the plaintiff failed to present her claims of sexual harassment and a hostile work environment based upon sex to the NYSDHR.  Dkt. #11-

2, pp.6-7.  Specifically, defendant notes that plaintiff made no mention to the NYSDHR of her complaints of sexually explicit language or materials.  Dkt. #11-2, p.7.

Plaintiff responds that she alleged each of the causes of action asserted in her complaint before the NYSDHR and that NYSDHR was on notice of each of her concerns regarding her work environment.  Dkt. #14, p.6.  Specifically, plaintiff responds that her rebuttal to the NYSDHR afforded notice of her complaints of sexual harassment and hostile work environment based upon sex.  Dkt. #14, p.7.

Defendant replies that the allegations set forth in plaintiff's rebuttal to the NYSDHR set forth claims of disparate treatment based on sex, not sexual harassment based on a hostile work environment.  Dkt. #15, p.7.

"As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC."  *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003).  Thus, "[a] district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge."  *Harris v. American Protective Services of New York*, 1 F. Supp.2d 191, 194-195 (W.D.N.Y. 1998), *quoting Butts v. City of New York Dep't of Housing Preservation & Development*, 990 F.2d 1397, 1401 (2d Cir. 1993).  "A claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made."  *Deravin*, 335 F.3d at 200, *quoting Fitzgerald v. Henderson*,

251 F.3d 345, 359-60 (2d Cir. 2001), *cert. denied*, 536 U.S. 922 (2002).  "[T]he factual

allegations in the EEOC charge, rather than any legal theories stated therein, should be

the focus for determining whether a cause of action is reasonably related to the

plaintiff's EEOC charge."  *Bridges v. Eastman Kodak Co.*, 822 F. Supp. 1020, 1026

(S.D.N.Y. 1993).  "Courts will not permit a claim that is based on a wholly different type

of discrimination to be brought if it was not initially asserted in the EEOC charge."

*Harris*, 1 F. Supp.2d at 195.


   Although plaintiff's charge of discrimination to the NYSDHR claims

"unlawful discriminatory practice relating to employment because of age, disability, sex,

opposed discrimination/retaliation," the only facts pertaining to plaintiff's sex are as

follows:

> In April 2008, Ms. Myers criticized me for poor time
> management because I was discussing a job posting with a
> co-worker.  However, on April 7 and April 8, 2009, two male
> staff members were telling sexually offensive jokes and they
> were not criticized or reprimanded for poor time
> management.

Dkt. #11-1, p.5.  However, in her rebuttal, plaintiff asserts that defendant "follows a

disparate disciplinary procedure and allows males to create a sexually offensive

environment without hindrance."  Dkt. #15, p.5.  The rebuttal notes sexual materials

being exchanged by male employees on their cell phones and the suggestion by male

employees that they avoided discipline by performing sexual favors for their

supervisors.  Dkt. #15, p.5.  These factual allegations are sufficient to exhaust plaintiff's

administrative remedies with respect to her claim of discrimination based on sex,

specifically, claims of disparate treatment of male and female employees and a work

envirnment hostile to female employees.   Accordingly, it is recommended that this aspect of defendant's motion to dismiss be denied.


**Timeliness**

Defendant argues that the plaintiff failed to exhaust administrative remedies in a timely fashion and that, as a result, allegations predating June 18, 2008, which is 300 days prior to the filing of the charge of discrimination with the NYSDHR, are time barred.  Dkt. #11-2, p.5.


Although plaintiff admits that the factual allegations preceding June 18, 2009 "are not available as a basis for a complaint," she asserts that they "are admissible to show background and a pattern and practice of discriminatory activity." Dkt. #14, p.8.  Plaintiff also relies upon the continuing violation theory and argues that the additional facts demonstrate a pattern and practice of discrimination.  Dkt. #14, pp.3-5.


In a deferral state such as New York, a complaint is timely if it is filed with the state agency (NYSDHR), within 300 days after the alleged unlawful employment practice occurred.  42 U.S.C. § 2000e-5(e)(1).  The ADA incorporates the administrative exhaustion procedures set forth in Title VII.  42 U.S.C. § 12117(a).  The ADEA similarly requires a plaintiff to file a Charge of Discrimination with the state agency within 300 days after the alleged discrimination.  29 U.S.C. § 626(d)(1)(B).  The exhaustion of administrative remedies is an essential element of the statutory scheme and defendants are entitled to insist that plaintiffs comply with this requirement as a

precondition to the filing of a lawsuit.  *Francis v. City of New York*, 235 F.3d 763, 767

(2d Cir. 2000).


        "When, as in this case, a plaintiff's allegations of discrimination extend

beyond the 300-day limitations period, the nature of the claim determines what

consideration will be given to the earlier conduct."  *Petrosino v. Bell Atlantic*, 385 F.3d

210, 220 (2d Cir. 2004).  "For example, in the case of a hostile work environment claim,

the statute of limitations requires that only one sexually harassing act demonstrating the

challenged work environment occur within 300 days of the filing; once that is shown, a

court and jury may consider 'the entire time period of the hostile environment in

determining liability.'"  *Id., quoting National R.R. Passenger Corp. v. Morgan*, 536 U.S.

101, 117 (2002).   In contrast, claims based upon discrete acts, such as termination,

failure to promote, denial of transfer, or refusal to hire

                    are not actionable if time barred, even when they are related
                    to acts alleged in timely filed charges.  Each discrete
                    discriminatory act starts a new clock for filing charges
                    alleging that act.  The charge, therefore, must be filed within
                    the . . . 300-day time period after the discrete discriminatory
                    act occurred.

*Morgan*, 536 U.S. at 113 & 114.  However, discrete acts which are no longer actionable

may nonetheless be considered "as background evidence in support of a timely claim."

*Id.* at 113.[1]

_____

[1] Contrary to plaintiff's argument, the consideration of discrete acts which are no longer actionable
does not convert the discrete acts into a continuing violation.  *Id.* at 114.  Furthermore, plaintiff has not
alleged facts setting forth a "pattern or practice claim," as that term is used to describe claims involving
"multiple incidents of discrimination against individuals in a particular protected class arising from a
discriminatory policy or mechanism, such as a seniority system or an employment test."  *Gaston v. New
York City Dep't of Health*, 432 F. Supp.2d 321, 328 n.1 (S.D.N.Y. 2006).

Therefore, although plaintiff may not rely upon factual allegations preceding June 18, 2008 to state a claim of discrimination on the basis of her age, sex, or disability, these allegations may be considered to the extent that they provide context to factual allegations within the 300-day limitations period.   As plaintiff's proposed amended complaint contains sufficient factual allegations occurring within 300 days of the filing of the Charge of Discrimination to support each of the six causes of action, *to wit*, discrimination on the basis of disability, age and sex, as well as retaliation for complaining about such discrimination, it is recommended that this aspect of defendant's motion to dismiss be denied.

**Amended Complaint**

Defendant argues that the motion to amend the complaint should be denied because the proposed amendments are futile.  Dkt. #11-2, p.3.

Plaintiff responds that the proposed amendments to the complaint amplify and clarify the factual allegations set forth in the original complaint.  Dkt. #14, p.8.

Fed. R. Civ. P. 15(a) provides that a party may amend a pleading by leave of court or by written consent of the adverse party.  Leave to amend is to be "freely granted" unless the party seeking leave has acted in bad faith, there has been an undue delay in seeking leave, there will be unfair prejudice to the opposing party if leave is granted, or the proposed amendment would be futile.  *Foman v. Davis,* 371 U.S. 178, 182 (1962); *State Teachers Retirement Bd. v. Fluor Corp*., 654 F.2d 843, 856

(2d Cir. 1981); Fed. R. Civ. P.15(a).  An amendment is futile if it cannot survive a

motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of

Civil Procedure.  *Parker v. Columbia Pictures Indus*., 204 F.3d 326, 339 (2d Cir. 2000).


As the proposed amended complaint does not seek to assert additional

causes of action but only attempts to clarify and amplify the factual allegations

supporting the original causes of action, the proposed amendments are not futile.

Therefore, the motion to amend the complaint is granted.


## CONCLUSION

Based on the foregoing, it is ordered that plaintiff's motion to amend the

complaint (Dkt. #8), is granted and it is recommended that defendant's motion to

dismiss the complaint (Dkt. #11), be denied.


Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:


This Report, Recommendation and Order be filed with the Clerk of the

Court.


ANY OBJECTIONS to this Report, Recommendation and Order must be

filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this

Report, Recommendation and Order in accordance with the above statute,

Fed.R.Crim.P. 58(g)(2) and Local Rule 58.2.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co., Inc. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).  <u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order</u>.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek, et al. v. Canadair Ltd., et al.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  <u>Failure to comply with the provisions of Rule 58.2, or with the similar provisions of Rule 58.2 (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.</u>

DATED:     Buffalo, New York
           March 2, 2012

                              *s/ H. Kenneth Schroeder, Jr.*
                              H. KENNETH SCHROEDER, JR.
                              United States Magistrate Judge